**Crystal STEPHENS, Plaintiff-Appellant,**

v.

**Roderick E. GILLETTE et al., Defendants-Respondents.**

**No. 33757.**

St. Louis Court of Appeals, Missouri.

Feb. 23, 1971.

Niedner, Niedner & Moerschel, St. Charles, for plaintiff-appellant.

Klutho & Cody, St. Louis, for defendants-respondents.

CLEMENS, Commissioner.

This is a suit for partition by plaintiff life tenant against defendant contingent remaindermen under § 528.010, V.A.M.S., which permits partition by a life tenant when the life estate is "burdensome and unprofitable." That is the issue here. The trial court found against the plaintiff life tenant and she appeals. We affirm.

We find the following to be the facts. The parties' grandfather Edmund Kessler died testate in 1926. He devised a 40-acre tract in St. Charles County to plaintiff, now 60 years old, childless and unmarried. The will provided that if plaintiff died without bodily heirs the land would pass to the testator's daughter Lena. Lena is dead and the five defendants are her heirs.

This 40-acre tract is unimproved and unfenced. It is rough, gently rolling land with ten acres tillable and fertile and 30 acres covered with brush and second-growth timber. The tract has no access to

a public road but its southeast corner is within 200 to 300 feet of U.S. Highway 40–61; that highway is now being widened. The land's present market value is $32,000.

About the time testator Edmund Kessler died in 1926 plaintiff left St. Charles County and moved west, first to Wentzville, Missouri, then to Kansas City and finally to Phoenix, Arizona. Plaintiff has never been back nor has she corresponded with the defendants. She is crippled by arthritis and curvature of the spine but is still regularly employed as a secretary. From 1926 to 1946 plaintiff's father, J. E. Stephens, lived near the 40-acre tract and on her behalf rented the ten tillable acres, collected the rent and paid the taxes. Thereafter until 1960 the land was farmed by neighbors but there is no record of the rental income.

Since plaintiff's father died in 1946 she has not paid the taxes on the land. Defendants began paying them at that time and have continued to do so. The annual taxes were $9.25 in 1946 and have steadily increased to $83.68. The trial court specifically found the present rental value of the land to be $300 a year.

Reverting to the controlling statute, § 528.010, V.A.M.S., we note that there may be partition, sale and investment of proceeds between a life tenant and contingent remaindermen when " * * * the life or other estate of immediate enjoyment is burdensome and unprofitable for [in] that the cost of paying the taxes and assessments thereon and holding, maintaining, caring for and preserving the lands from waste, or injury, and deterioration, exceeds the reasonable value of the rents and profits thereof, and that a greater income can probably be had from proceeds of a sale thereof invested in bonds * * *."

Plaintiff had the burden of proving two conditions precedent to entitle her to partition: First, that the life estate was "burdensome and unprofitable" and, second, that a greater income would come to her by selling the land and investing the proceeds. We look to the first condition.

We need not construe the statute's general words "burdensome and unprofitable." The statute says those conditions exist when the taxes and maintenance costs exceed the rental value. Here there was no evidence of any maintenance costs but the $300 annual rental value did exceed the annual taxes.

The plaintiff argues that she has received no income from the land and was unable to personally manage it. We note she abandoned that task in 1946 when she quit paying taxes and made no effort thereafter to rent the land. We need not consider the effect of plaintiff's claimed inability. The statute does not premise a life tenant's right to partition on actually receiving inadequate income from the land but on the lack of rental value. Nowhere in evidence does it appear that the rental value was insufficient to pay the taxes. In view of plaintiff's complete lack of effort to rent rentable property we do not equate the lack of rental income with a lack of rental value. To the contrary, the defendant's evidence did show sufficient rental value to meet the only expense, annual taxes.

Plaintiff stresses the case of Willhite v. Rathburn, 332 Mo. 1208, 61 S.W.2d 708 [10], where partition was granted to a life tenant. There, plaintiff's uncontroverted evidence showed that for two years preceding trial income received from the land was wholly insufficient to pay for taxes and maintenance. Unlike our case, in Willhite there was no evidence that the land could produce an adequate income. That case does not hold that a life tenant may let rentable land lay idle and then contend it has no rental value. We do not consider the Willhite case is in point. Plaintiff also cites Brittin v. Karrenbrock, Mo.App., 186 S.W.2d 35, and Noyes v. Stewart, Mo., 235 S.W.2d 333, but neither case deals with the issue on this appeal.

The plaintiff did not meet the burden of showing the life estate was "burdensome and unprofitable" in the sense that the land's rental value was inadequate to pay the costs of taxes and maintenance. The trial court properly ruled in favor of defendants. The judgment is affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is affirmed.

BRADY, P. J., and DOWD and WOLFE, JJ., concur.