STATE OF MISSOURI on the information of JOE C. CRAIN, Prosecuting Attorney of Christian County, at the relation of E. K. PEEBLES, Appellant, v. L. L. MOORE.—99 S. W. (2d) 17.

Court en Banc, October 31, 1936.

*G. Purd Hays* and *Tom R. Moore* for appellant; *Seth V. Conrad* of counsel.

494

*Jacob Hartley* for respondent.

ELLISON, C. J.—*Quo Warranto*. The appellant, E. K. Peebles, was elected recorder of deeds of Christian County at the general election in November, 1934, but the Secretary of State refused to commission him because of the enactment recently theretofore of Laws 1933, page 360, making the circuit clerk *ex officio* recorder in counties containing less than 20,000 inhabitants. Christian County is one of these, its population according to the census of 1930 being 13,169.

The respondent, L. L. Moore, was elected circuit clerk at the same election. In due course he qualified and was commissioned as circuit clerk and *ex officio* recorder under the new law, and entered upon the performance of the duties of both offices. Thereupon the appellant, through the prosecuting attorney, instituted this *quo warranto* proceeding in the Circuit Court of Christian County to oust the respondent Moore from the office of recorder. The cause was submitted on an agreed statement of facts presenting only one question—whether Laws 1933, page 360 is constitutional. The circuit court upheld the law and the relator has appealed presenting that sole question in his brief. The provisions of the State Constitution claimed to be violated are Article III; Section 28 and subdivisions 32 and 33 of Section 53 of Article IV; and Section 12 of Article IX.

 We take up first appellant's challenge of the act, under Section 28, Article IV of the Constitution providing that "no bill . . . shall contain more than one subject, which shall be clearly expressed in its title." The caption of the act as it appears in Laws 1933, page 360, reads as follows:

"RECORDER OF DEEDS: Relating to Office, Term, Bond and Election of Recorder of Deeds.

"AN ACT to repeal Sections 11526, 11528, 11529, 11533, 11534, 11535, 11538, 11539, 11540 and 11541 of the Revised Statutes of Missouri for the year 1929, the same being found on pages 3112, 3113 and 3114 of Volume 2 of the Revised Statutes of Missouri for the year 1929, and being a part of Chapter 74, Article I entitled 'Recorders of Deeds' and relating to 'Recorders of Deeds,' and to enact in lieu thereof seven new sections, pertaining to the same subject to be known as Sections 11526, 11528, 11529, 11534, 11535, 11538 and 11541."

As we understand it, the first point made by appellant under this head is that the bill shows on its face it contains more than one subject, because the "title" as printed in the Session Acts, aforesaid, starts out in heavier type: "RECORDER OF DEEDS: Relating to Office, Term, Bond and Election of Recorder of Deeds." Appellant's view apparently is that these catch words are parts of the title, and that each is a separate subject, thereby proving the bill contains more than one subject. He says the "original bill" as found in Article 1, Chapter 74, Revised Statutes 1929, has only the single title "Recorder of Deeds."

This contention is without merit. Catch words prefixed by the compiler of our Session Acts to the legislative title of a bill are not parts of the title in a constitutional sense. [State v. Thomas, 301 Mo. 603, 615, 256 S. W. 1028, 1029; Willhite v. Rathburn, 332 Mo. 1208, 1215, 61 S. W. (2d) 708.] The legislative title shows the act

is one to repeal ten named sections of the Revised Statutes of 1929, relating to recorder of deeds, and to enact in lieu thereof seven new sections pertaining to the same subject. This was sufficient. [Asel v. City of Jefferson, 287 Mo. 195, 205, 229 S. W. 1046, 1048; State ex rel. Mueller Baking Co. v. Calvird, 338 Mo. 601, 92 S. W. (2d) 184, 188.] The combining in one bill of provisions creating the office of recorder of deeds in all counties containing 20,000 inhabitants or more, with provisions making the circuit clerk *ex officio* recorder in counties of less population, and other provisions concerning the term, bond and election of recorders of deeds, did not make the act double. All these matters have a natural connection with the general subject of the bill, which is recorders of deeds, and properly could be embodied in one act: Ewing v. Hoblitzelle, 85 Mo. 64, 71; Thomas v. Buchanan County, 330 Mo. 627, 634, 51 S. W. (2d) 95, 97.

 Another point made by appellant, if we properly interpret his brief, is this. Section 11526, Revised Statutes 1929, provided "there shall be an office of recorder in each county in the state, to be styled 'the office of the recorder of deeds.'" The repealing section in the 1933 act is identically the same, except that after the word "state" there is inserted a limiting phrase, "containing 20,000 inhabitants or more." Appellant says this is merely an *amendment* of the former section, and not a repeal of it as the title of the bill declares; and he asserts that the title of the act is for that reason misleading. This contention, if we are correct in thinking appellant makes it, does not call for extended discussion. The repeal of a law means its complete abrogation by the enactment of a subsequent statute. 59 C. J., sec. 498, p. 899; St. Louis v. Kellman, 235 Mo. 687, 695, 139 S. W. 443, 445; whereas the amendment of a statute means an alteration in the law already existing, leaving some part of the original still standing. [59 C. J., sec. 421, p. 850; State ex rel. Gamble v. Hubbard, 148 Ala. 391, 394, 41 So. 903, 905; Aldridge v. Commonwealth, 192 Ky. 215, 218, 232 S. W. 619, 620.] In the present instance there was an express repeal of the former section.

 Still another contention made by the appellant is this. As already stated the reenacted Section 11526 provides there shall be an office of recorder in each county in the State containing 20,000 inhabitants or more. Reenacted Section 11528 says the clerks of the circuit courts shall be *ex officio* recorders in counties containing less than that population. Applying the maxim *expressio unius est exclusio alterius* appellant argues that Section 11526 by implication abolishes the office of recorder in counties of less than 20,000 population; and then asks how the circuit clerk can be recorder *ex officio* in a county where the office of recorder has been abolished! By this course of reasoning appellant arrives at the conclusion that the 1933 act is so conflicting and contradictory that it should be declared un-

constitutional because the subject matter thereof cannot be clearly expressed in the title. We think we need not follow this line of argument further. The meaning and intent of the present law are too plain.

There is nothing novel in the 1933 act, and nothing new in the provision that the circuit clerk shall be recorder *ex officio* in counties of a certain population. For more than 100 years our statutes provided generally that circuit clerks should be *ex officio* recorders. [R. S. 1825, p. 655; Sec. 11528, R. S. 1929.] And from 1865 on there was a further provision that in every county having a population of ten thousand inhabitants, it should be lawful for the county court to make an order separating the two offices. [G. S. 1865, sec. 23, p. 161; Sec. 11533, R. S. 1929.] The Act of 1933 struck out this Section 11533, and reenacted Sections 11526 and 11528 making the circuit clerk *ex officio* recorder in counties containing less than 20,000 inhabitants and separating the two offices in counties of greater population. But at the same time it was also provided by Section 11538 that in counties having a population of 20,000 and less than 200,000 inhabitants the county court might upon its own motion submit to vote at any quadrennial election, beginning in 1936, the question of combining the two offices, and that they must do so upon the petition of at least one per cent of the taxpaying qualified voters. So the effect of the new law has been mainly to change the classification of counties, and the manner of determining whether the offices shall be separated.

We may say here, by way of interpolation, that the new law of 1933 struck out not only Section 11533, Revised Statutes 1929, as above explained, but also Sections 11539 and 11540. These two sections dealt with certain counties wherein the offices of county clerk (not circuit clerk) and recorder had been joined. But as there has not been a combination of these two offices in any county in this State for a number of years the repeal of these two sections is only a matter of historical interest. They have no bearing on this case.

II. This brings us to appellant's assignment (next in logical order) that the Act of 1933, and especially Section 11538 thereof, violates Article III of the Constitution which divides the powers of government into three distinct departments—the legislative, executive and judicial. His contention is that the act attempts to delegate legislative power to the county court, by permitting that court to adopt or reject the law requiring the office of recorder to be a separate office in counties having 20,000 inhabitants or more. It is to be doubted whether appellant is entitled to raise that question, since Christian County, in which he claims the office of recorder, does not have a population large enough to bring it within the provisions of

Section 11538. [Citizens Mut. Fire & Lightning Ins. Soc. v. Schoen (Mo. Div. 2), 93 S. W. (2d) 669, 670.] But nevertheless we shall consider the assignment because appellant maintains the whole law is rendered void by the alleged defect. [State v. Bengsch, 170 Mo. 81, 114, 70 S. W. 710, 719.]

As a matter of fact Section 11538 does not empower the *county court* to adopt or reject the law. What it says (summarizing it more closely than we did above) is that in counties now or. hereafter having a population of 20,000 and less than 200,000 inhabitants, the question of combining the offices of circuit clerk and recorder may be submitted or resubmitted, to the qualified voters at the general election to be held in the year 1936, or any four or multiple of four years thereafter. This the court may do upon its own motion, and must do when a petition is presented signed by taxpaying citizens who comprise at least one per cent of the qualified voters of the county. The section then goes on to say: "If a majority of those voting on such question vote in favor of abolishing such office, then after the expiration of the term of office of the recorder then in office, the circuit clerk of such county shall be *ex officio* county recorder. . . ."

If that is an unconstitutional delegation of legislative power it is hard to understand how and why the former law allowing the county court by its own order to separate the two offices in counties having 10,000 population was allowed to stand for nearly seventy years between 1865 and 1933. That section was under scrutiny in State ex inf. Crow v. Evans, 166 Mo. 347, 357, 66 S. W. 355, 358, and this court held the Legislature had the power "either to abolish the office (of recorder) or to separate it from the office of circuit clerk, and provide for its occupancy either by election or appointment"—and in so holding the opinion must have meant the separation could be effected through an order of the county court, because the statute with which it was dealing did so provide.

But be that as it may, the Act of 1933 puts the matter on a local option basis governed by popular vote, and however much the constitutionality of such statutes once may have been doubted in this State, it is settled now that they are, in proper cases, valid. [State ex rel. Carpenter v. St. Louis, 318 Mo. 870, 904, 2 S. W. (2d) 713, 725.] Speaking broadly the criteria by which the legislation is to be measured are these: first, the statute must take effect as a law *proprio vigore* without requiring the consent of local authorities· or the electorate to make it such; second, the legislation generally must be on a matter of local concern so far that varied and varying local conditions may be consulted in its application, though this is not always regarded as essential, Chicago Term. Trans. Ry. Co. v. Greer, 223 Ill. 104, 105, 79 N. E. 46, 47, 114 Am. St. Rep. 313, 315, note, page 317. A statute cannot delegate unfettered discretion at large in the legisla-

tive field but must be complete enough to declare the will of the law-makers within practicable limits. [Panama Refining Co. v. Ryan, 293 U. S. 388, 421, 79 L. Ed. 446, 459, 55 Sup. Ct. 241, 248.] Subject to these rules it is well established that such enactments may be made to take effect upon a contingency such as a finding of fact by a public board, tribunal or officer or a particular vote of the people. [12 C. J., sec. 365, p. 864; 6 R. C. L., sec. 167, p. 166.]

Appellant has cited State v. Field, 17 Mo. 529, 59 Am. Dec. 275. There the court had in judgment Laws 1851, page 274, which repealed former road laws and prescribed a comprehensive scheme for establishing and maintaining public roads. Section 33 of the act provided: "If the county court of any county be of opinion that the provisions of this act should not be enforced, they may, in their discretion, suspend the operations of the same for any specified length of time, and thereupon this act shall become inoperative in such county for the period specified in such order; and thereupon order the roads to be opened and kept in good repair under the laws heretofore in force . . ." This court held the section void as an unconstitutional attempt to delegate legislative power to the county court. The opinion says: "This act, by its own provisions, repeals the inconsistent provisions of a former act, and yet it is left to the county court to say which act shall be in force in their county." This Field case is clearly distinguishable on its facts from the instant cause.

Merchants' Exchange of St. Louis v. Knott, 212 Mo. 616, 111 S. W. 565, also is cited. In that case the constitutionality of the Grain-Weighing & Grain-Inspection Act of 1907, Laws 1907, page 285, was attacked. The act gave the Board of Railroad and Warehouse Commissioners very broad powers in establishing State inspection and weighing of grain at such places and in such territory within the State as in their opinion should seem necessary. It was held, as summarized in the syllabus, that the act gave "to the commissioners the vital power to capriciously say, as their opinion serves, to what places, in what territory and at what times the statute shall apply, or whether or not it shall be in force at any time in any place, and is void of any certain intendment of the legislative mind, beyond the mere grant of power, and the power granted in its essence partakes of simple despotism." The opinion further says: "We are of opinion that the power to bind and loose, to inaugurate or suspend the operation of the law, to say when and where it is law is of necessity an inherent and integral part of the law-making power, not to be delegated to, and wielded by, any commission." It is apparent this case is not in point.

The last case cited by appellant is Ex parte Cavanaugh v. Gerk, 313 Mo. 375, 280 S. W. 51. By ordinance a traffic council was created in the city of St. Louis composed of certain city officers. This council

was given practically *carte blanche* authority to adopt traffic rules and regulations throughout the city, and it was provided that upon their publication such rules and regulations should become effective and govern the regulation of traffic for a period of ninety days after the date of publication, and during the pendency in the Board of Aldermen of an ordinance to enact them into law. The case holds this was an unwarranted delegation of legislative power because the authority conferred upon the traffic council was unlimited, and no proper legislative boundaries to their action had been fixed by the ordinance. This case does not help appellant.

But there is another decision, not cited by appellant, State ex rel. Rosenthal v. Smiley, 304 Mo. 549, 263 S. W. 825, which we ought not to pass unnoticed. In that case Section 783, Revised Statutes 1919 (now Sec. 11364, R. S. 1929, Mo. Stat. Ann., p. 618) was involved, the statute providing that the county courts of all counties in this State containing one hundred thousand inhabitants or more, may in their discretion appoint and commission a county counselor who shall hold office for two years, and until his successor is appointed, commissioned and qualified.

This court en banc said: ''It is well settled that only the Legislature has the power to create a public office (other than a constitutional office) as an instrumentality of government, and this power it cannot delegate.'' Nevertheless the opinion recognized the statute as being constitutional on the theory that ''the statute itself creates the office, potentially, to come into actuality upon the happening of a future contingency, namely, the exercise of the power of appointment conferred by it upon the county court.'' But it further held that the county court's power was exhausted when that court had once made an appointment to the office and thereby brought it into existence; and that the court could not thereafter, when a vacancy had occurred, treat the office as discontinued and recreate it by appointing a new county counselor for a full term of two years and not merely for the unexpired part of the term of his predecessor. On this point the opinion declares: ''To hold otherwise would be to hold in effect that the Legislature had delegated to the county court authority to create and discontinue the office from time to time at its pleasure, and this the Legislature could not do.''

Now in the instant case Section 11538 provides the county court may, and on petition must, submit or resubmit the question of combining the offices of circuit clerk and recorder in counties of 20,000 and less than 200,000 inhabitants every four years, beginning in 1936. Is there anything in this Smiley case to undermine the statute as a constitutional enactment? We think not. The section does not say the court may or must submit or resubmit the question of combining or *separating* the two offices. It only says the question of combining

them may or must be voted on quadrennially. In other words, the statute does not delegate to the people the power to discontinue and recreate the separate offices of recorder at pleasure, but only permits them to vote on the question of joining the two offices; and when there has been such joinder it would seem the voting power of the people under the section is exhausted.

But in view of the need of putting at rest any question concerning the constitutionality of the statute creating the important office of recorder of deeds—as affected by the Smiley case, supra—we feel we ought not to let our ruling stand alone on the foregoing construction of the statute, when there is a broader ground upon which it can be based. In our opinion Laws 1933, page 360, is not unconstitutional even if Section 11538 of that act be open to the construction that the county court may or must submit or resubmit the question of combining or *separating* the offices of circuit clerk and recorder in counties of the population there specified.

The gist of the holding in the Smiley case was that if the act there considered meant the county court was authorized to create and discontinue the office of county counselor *at pleasure* (and therefore for an indefinite tenure) it was too broad and constituted an unwarranted delegation of legislative power. But in the instant case Section 11538 only permits the submission of the question of combining the two offices every four years, and even then only subject to right of the incumbent recorder to serve out his term. This was not a roving commission, and on both reason and authority the operative effect of a constitutional law may be made to depend on more than one contingency or on successive contingencies. Thus, in Ex parte Bassitt, 90 Va. 679, 19 S. E. 453, the Virginia Supreme Court dealt with a statute which provided that whenever a county court should "be of opinion that the public service requires a greater number of justices or constables in any district" than the minimum number prescribed by the Constitution, and should so order, such additional officers should be elected at each succeeding general election *"until otherwise ordered by the court."* (Italics ours.) This statute was held constitutional as against the contention that it was an unwarranted delegation of legislative power.

Likewise, in State ex rel. Judah v. Fort, 210 Mo. 512, 109 S. W. 737, this court en banc by a divided vote upheld the constitutionality of Laws 1907, page 209, which created an additional division of the criminal court of Jackson County to be known as Division 2, and provided that whenever in the opinion of the judge of Division 1 of said criminal court the business of the court should require the assistance of an additional judge to promptly dispose of the same, said judge of Division 1 should notify the judge of Division 7 of the circuit court of that county, whereupon the latter should proceed to

opén said Division 2 and to transact the business thereof "until in the opinion of the judge of Division 1 of said court" such assistance was no longer needed. The act also provided that change of venue cases from one division of said criminal court should go to the other. But the act made no provision for the election or appointment of a separate judge for said division, prescribed no term of office, imposed no qualifications and fixed no compensation except that such provisional judge should receive the same pay that he got as regular circuit judge.

Further, it is familiar law that under our statutes town, city and consolidated schools may be organized on petition, pursuant to popular vote, Sections 9326, 9353, Revised Statutes 1929; and may be disorganized or abolished by vote, Section 9331, Laws 1931, page 350; so, also, cities of the third class pursuant to vote of the electorate may adopt and abandon the alternative form of government, Sections 6907, 6927, Revised Statutes 1929; and the city manager form of government may be adopted or abandoned in the same manner, Sections 6930, 6945, Revised Statutes 1929. And only recently it was enacted by Laws Extra Session, 1933-4, page 77, that elections might be held in certain cities of the State to vote on the question whether intoxicating liquors shall be sold therein and Section 44-a-6 of that act provides that whenever an election has been held and decided for or against the sale of intoxicating liquor, the question shall not be again submitted within four years.

Section 10, Article IX of the State Constitution makes the offices of sheriff and coroner constitutional offices; and Section 14 of the Article then provides: "Except as otherwise directed by this Constitution, the General Assembly shall provide for the election or appointment of such other county, township and municipal officers as public convenience may require; and their terms of office and duties shall be prescribed by law; but no term of office shall exceed four years." Under this section the Legislature was authorized to create the offices of circuit clerk and recorder and to provide how they should be filled. State ex inf. Hadley ex rel. Wayland v. Herring, 208 Mo. 708, 720, 727, 106 S. W. 984, 986, 988; and as stated in State ex inf. Crow v. Evans, 166 Mo. 1. c. 357, 66 S. W. 1. c. 357, the Legislature had the power either to abolish the office of recorder or to separate it from the office of the circuit clerk, and to provide for its occupancy either by election or appointment. And it could make these provisions dependent upon contingencies, namely, a vote of the people. We think the Act of 1933 clearly is constitutional as against the objection that it involves an unwarranted delegation of legislative power.

Finally the appellant assigns (substantially quoting) that the General Assembly cannot delegate legislative action or power to the county court of any county to select the clerk of the judiciary or in

any manner to hamper or infringe upon the duties of the clerks of the judiciary so as to lessen their efficiency to the courts they serve. All of this, the assignment says, would violate Article III of the Constitution. This raises a novel question upon which we have been unable to find authority.

Section 11538 of the 1933 act plainly shows on its face that it does not even purport to give the county court the power to select the circuit clerk. All the section does is to give that court a power of initiative on its own motion or on petition to submit to popular vote the question whether the offices of circuit clerk and recorder shall be combined in counties of from 20,000 to 200,000 population. But we understand the appellant seeks by this assignment to raise the further point that the Legislature cannot delegate to the county court power to hamper or infringe upon the duties of circuit clerks so as to lessen their efficiency to the circuit courts which they serve, because that would be an encroachment upon judicial power in violation of Article III of the Constitution. In other words, the contention is that the Legislature cannot delegate that power because it, itself, does not possess it. So the question boils down to the proposition whether statutes requiring the offices of circuit clerk and recorder to be combined are unconstitutional because they put upon the circuit clerk the additional burden of performing the duties of the office of recorder, and thereby interfere with his efficiency as clerk of the circuit court.

In this State while the Supreme Court and Courts of Appeals have power to appoint their own clerks, this is not true of the circuit court. Section 39, Article VI of the Constitution provides that the clerks of all courts of record, except the Supreme Court and Courts of Appeals, shall be elected, for such terms and in such manner as may be directed by law. Chapter 77, Revised Statutes 1929 (Mo. Stat. Ann., p. 1795), covers all these matters, providing for the election of circuit clerks every four years, and for the filling of vacancies by appointment by the Governor. Also, as we have already pointed out, for well over a century, ever since 1825, the statutes have provided generally that the circuit clerk shall be *ex officio* recorder. Twice during that period a new Constitution has been adopted, but it has never been thought up to now, so far as we are aware. that the Legislature lacked constitutional power to provide that the same officer should perform the duties of both offices.

Our circuit courts are of constitutional origin, Section 1, Article VI, Constitution of Missouri; and the office of circuit clerk is recognized by the aforesaid provision of Section 39 of the same article. It was held in State ex rel. Henson v. Sheppard, 192 Mo. 497, 515, 91 S. W. 477, 482, that the office "may not be dispensed with." But it was also ruled in the same decision that the circuit court had no inherent power to remove a circuit clerk from office pending disposi-

tion of a charge of murder which had been filed against him; and that the court must follow the statute. We will not go so far as to say the courts would be bound by any statute the Legislature might enact affecting the office of circuit clerk, no matter how much the transaction of court business might be impeded thereby, but we cannot approve appellant's contention that Sections 11528, 11529 and 11538, Laws 1933, page 360, are unconstitutional because they provide or contemplate that the circuit clerk shall also be *ex officio* recorder.

III. There is a further assignment that the 1933 act violates Section 53 of the Constitution and particularly subdivisions 32 and 33 thereof. This is the section that forbids the General Assembly to pass any local or special law. Appellant has not aided us by pointing out specifically wherein the 1933 act is a local or special law. Section 11526 thereof provides there shall be a separate office of recorder of deeds in each county in the State "containing 20,000 inhabitants or more." Section 11528 says the clerks of circuit courts shall be *ex officio* recorders in their respective counties "except in counties containing 20,000 inhabitants or more." The two sections obviously refer to counties which from time to time contain the specified populations. That a valid classification of counties may be made on a population basis is well established. There is no merit or substance to this contention. [Davis v. Jasper County, 318 Mo. 248, 253, 300 S. W. 493, 495.]

IV. The final assignment is that the 1933 act violates Section 12, Article IX of the Constitution which says "the General Assembly shall, by a law uniform in its operation, provide for and regulate the fees of all county officers, and for this purpose may classify the counties by population." The act itself says nothing at all about salaries, and appellant has not seen fit to elaborate on this assignment by pointing out in his argument wherein he thinks the law violates the aforesaid constitutional provision. We do not feel called upon to grope blindly about the important business of determining the constitutionality of the act, upon a mere suggestion.

This covers all the assignments in appellant's brief. The judgment of the trial court is affirmed. All concur.